**[NOT FOR PUBLICATION]**

**[7]**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCEL ROLL, | : |
| | : |
| Plaintiff, | : Civil Action No. 07-cv-04136 (FLW) |
| | : |
| v. | : |
| | : |
| VIJAY SINGH et al. | : |
| | : **AMENDED OPINION** |
| Defendants. | : |
| | : |

**WOLFSON, United States District Judge**

Presently before the Court is the Motion of Defendants, Vijay Singh, ("Singh"), and WB Tech LLC ("Wave LLC") to dismiss the Complaint of Plaintiff Marcel Roll ("Roll") pursuant to Fed R. Civ. P. 12(b)(6), for failure to state a claim. Plaintiff's Complaint alleges securities fraud under Federal and New Jersey law as well as claims for common law fraud, equitable fraud, negligent misrepresentation and breach of fiduciary duty. This action arises out of the events surrounding the redemption of Plaintiff's 20 percent interest in Wave LLC, a company that was owned by Singh and Roll before the redemption. Roll alleges that Singh made material misrepresentations and omissions to induce Roll to cede his interest in Wave LLC. The Court finds that: (1) Plaintiff has not met the heightened pleading requirements for his Federal and New

-1-

Jersey based securities fraud claims with regard to loss causation; (2) Plaintiff is barred from bringing his securities fraud claims under Federal and New Jersey law due to his failure to file suit within the applicable statute of limitations period; (3) Plaintiff's claim for negligent misrepresentation is dismissed because it is not an appropriate claim against the direct contractual parties, such as Defendants; and (4) Plaintiff's claims for common law fraud, equitable fraud, and breach of fiduciary duty survive because they were adequately pled.   Accordingly, Defendants' Motion to Dismiss Plaintiff's Complaint is granted in part and denied in part.  Plaintiff's Federal and New Jersey based securities fraud claims are dismissed along with Plaintiff's negligent misrepresentation claim. However, Plaintiff's claims for common law fraud, equitable fraud, and breach of fiduciary survive this Motion to Dismiss.

**I.      BACKGROUND**

Roll's Complaint alleges the following facts, which are assumed to be true for purposes of this Motion:

Roll, a resident of Switzerland, and Singh, a resident of New Jersey, met in September 1997. (Compl. at ¶¶ 5-6, 9.)  Each was developing a "wave bioreactor . . . [i.e.] a disposable bioreactor driven by a wave motion."  They decided to work together to manufacture and sell wave bioreactors and related products.  (Id. at ¶¶ 8-9.)  Singh would have "primary responsibility" for North American sales, while Roll would have "primary responsibility" for sales in Europe and Africa; each would own a 20 percent interest in the other's company. (Id. at ¶ 9.)  The Complaint does not allege, however, that their agreement about "primary" responsibilities for sales gave either party exclusive rights to any designated sales territory.  (See id.)

-2-

Wave LLC was organized under New Jersey law in January 1999. (Id. at ¶ 10.) Roll and Singh respectively held 20 and 80 percent interests in the company. (Id.)  Two months later, in March 1999, Wave AG was organized under Swiss law. (Id. at ¶ 11.) Singh received a 20 percent interest in that company; Roll and his brothers held the remaining 80 percent. (Id.)  Singh managed Wave LLC, and Roll managed Wave AG. (Id. at ¶ 10-11.)  The two companies cooperated in developing and selling products from 1999 through early 2004. (Id. at ¶ 12.)

In August 2003, Singh asked Roll to sell his 20 percent interest in Wave LLC back to the company, citing a need to restructure Wave LLC as an S-corporation. (Id. at ¶ 13.)  In an August 13, 2003 letter, Singh wrote that the restructuring was "unfortunately necessary for the reasons [he] discussed with [Roll]," and that "[d]ue to our circumstances, it is important that we resolve this issue by the end of August."(Id.) Singh noted: "This in no way reflects any personal dissatisfaction. I hope we will continue to have commercial and technical relationships. We will provide all assistance and support as we have in the past. It is clear that together we can be much stronger in the industry and have better days ahead." (Id. at ¶ 14.)

Singh offered Roll $500,000 for his interest in Wave LLC. (Id. at ¶ 15.)  Roll alleges that Singh did not disclose "how this amount had been determined" and that the parties did not negotiate the price. (Id. at ¶ 15.)  Roll does not allege that he ever asked Singh how the price had been "determined" nor does he allege that he attempted to negotiate the price. (See id.)  Rather, according to Roll, he simply accepted Singh's offer, allegedly "[i]n reliance on Singh's representations that the redemption of [Roll's] interest in Wave LLC was necessary and urgent, and that the commercial and technical

relationships between Wave LLC and Wave AG would continue . . . ." (Id. at ¶ 16.)

The Complaint states that these alleged misrepresentations, which had nothing to do with Wave LLC's value, induced Roll to accept Singh's $500,000 figure.  The Complaint does not allege that Singh misrepresented Wave LLC's sales, costs, value or financial condition in any way – or that Roll reviewed or even sought this information. (See id. at ¶¶ 13-18.)

Roll and Singh executed a Redemption Agreement on September 18, 2003 (even though Singh allegedly told Roll that the transaction had to be completed in August). Roll agreed to resign as a member of Wave LLC and surrender his 20 percent interest in return for payment of $500,000. (Id.)  Simultaneous with the execution of the Redemption Agreement, Roll and Singh executed an "Option" granting Roll an option to buy Singh's 20 percent interest in Wave AG. (See Singh Cert. Ex. B.)[1]

The Redemption Agreement contains an integration clause that provides:

This Agreement incorporates the entire understanding between the

---

[1] The Court does not view the Redemption Agreement as a matter outside of the pleadings that converts this motion into a summary judgment motion.  Courts ruling on Rule 12(b)(6) motions may examine documents referenced in the complaint.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2510 (2007); accord Pension Benefit Guar. Corp. v. White Consul. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("A court may consider an undisputed authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."), cert. denied, 510 U.S. 1042 (1994); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996))); Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992) (trial court has the discretion to consider documents outside the pleading on motion to dismiss).  Similarly, the Option, while not explicitly referenced in the Complaint, was executed simultaneously with the Redemption Agreement and therefore will be considered part of the record for purposes of this Motion to Dismiss.

-4-

> Company and Roll with respect to the subject matter hereof and
> supersedes any and all prior understandings, written or oral. Any earlier
> agreements, discussions or negotiations between the Company and Roll
> are null and void and shall be of no further effect after the date hereof.

(Singh Cert. Ex. A., Redemption Agreement ¶ 11).

Roll alleges that Wave LLC began competing with Wave AG in the "worldwide market" in "early 2004."(Id. at ¶ 23.)  It was not until May 2005, however, nearly two years after the execution of the Redemption Agreement, that Singh allegedly formed Wave Europe Pvt. Ltd. in Ireland ("Wave Europe") and began "encroaching" on Wave AG's sales territory.  (Id.) The Complaint does not allege that Wave LLC and Wave AG had any agreement restricting where each company could sell.  Wave AG has not been named as a party in this case.

Roll also alleges that Defendants "improperly interfered" with non-party Wave AG's customer relationships in 2005.  The "interference" allegedly consisted of Wave LLC's refusal to fill Wave AG's order for "cellbags" in February 2005 for a Wave AG customer in the Netherlands, Cenocor BV, and telling that customer that Wave AG no longer had the right to distribute cellbags and that cooperation between Wave LLC and Wave AG had ceased. (Id. at ¶ 24.)  Roll also alleges that in July 2005, Wave LLC falsely told Wave AG's licensee in the United Kingdom, Bioprocess Engineering Services, Ltd., that Wave AG no longer had the right to appoint distributors or agents in Europe. (Id.)  Plaintiff alleges that Wave LLC and Singh's interference with Wave AG's business and reputation have resulted in the loss of customers and business opportunities, thus damaging the business of Wave AG.  (Id. at ¶ 26.)

Next, Roll alleges that Singh sued Wave AG for trademark infringement.  In

December 2005 and February 2006, Panacea Solutions, Inc. ("Panacea"), a company controlled by Singh, initiated trademark proceedings against Wave AG in Switzerland. (Id. at ¶ 28.)  In November 2005, Panacea also sued Roll, Wave AG, and another company controlled by Roll's family, in the United States District Court for the Southern District of New York, for trademark infringement. (Id. at ¶ 29.)

On April 17, 2007, nearly four years after the execution of the Redemption Agreement, Singh announced that Wave LLC had been sold to GE Healthcare, a unit of the General Electric Company. The price is "undisclosed," but Roll alleges on information and belief that it exceeded $40 million. (Id. at ¶ 31.) Only after learning of that sale did Roll file this suit alleging he had been defrauded into selling his shares four years earlier.

## II.    STANDARD OF REVIEW

### A.    MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

When considering a motion to dismiss on the pleadings, a Court must take all allegations in the complaint as true, viewed in the light most favorable to Plaintiffs. See Gomez v. Toledo, 446 U.S. 635, 636 n. 3 (1980); Robb v. Cty of Phila., 733 F.2d 286, 290 (3d Cir.1984).  Recently, in Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the Rule 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  Twombly, 127 S. Ct. at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the

Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted). "After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. Feb. 5, 2008) (citing Twombly, 127 S.Ct. at 1969 n. 8). The "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a possibility requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. at 234 (citing Twombly, 127 S.Ct. at 1965).

**B.      HEIGHTENED PLEADING REQUIREMENT OF PARTICULARITY**

**1.      FEDERAL RULE OF CIVIL PROCEDURE 9(b)**

Independent of the standard applicable to Rule 12(b)(6) motions, Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "This particularity requirement has been rigorously applied in securities fraud cases." Cal. Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126, 144 (3d Cir. 2004)

(citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir.1997)); see

In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002).  As such,

plaintiffs asserting securities fraud claims are required under Rule 9(b) to specify " 'the

who, what, when, where, and how: the first paragraph of any newspaper story.' " In re

Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (quoting DiLeo v. Ernst &

Young, 901 F.2d 624, 627 (7th Cir.1990)); Kanter v. Barella, 489 F.3d 170, 175 (3d Cir.

2007); In re Rockefeller, 311 F.3d at 217.  "Although Rule 9(b) falls short of requiring

every material detail of the fraud such as date, location, and time, plaintiffs must use

'alternative means of injecting precision and some measure of substantiation into their

allegations of fraud.' " In re Rockefeller, 311 F.3d at 216 (quoting In re Nice Systems,

Ltd. Sec. Litig., 135 F. Supp.2d 551, 577 (D.N.J. 2001)).   The particularity requirement

provides "deterrence against overly broad allegations." U.S. ex rel. LaCorte v.

SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234 (3d Cir. 1998).  Even a

complaint that passes muster under Rule 12(b)(6) can fail under Rule 9(b).  In re

Rockefeller, 311 F.3d at 224.

## 2.      PRIVATE SECURITIES LITIGATION REFORM ACT ("PSLRA")

In addition to Rule 9(b), plaintiffs alleging securities fraud must also comply with

the heightened pleading requirements of the PSLRA.  15 U.S.C. §§ 78u-4(b)(1), (b)(2).

"Significantly, the PSLRA 'imposes another layer of factual particularity to allegations

of securities fraud.'" Cal. Public Employees' Retirement System v. Chubb Corp., 394

F.3d 126, 144 (3d Cir. 2004) (quoting In re Rockefeller, 311 F.3d at 217).  The PSLRA

requires the plaintiff to "specify each statement alleged to have been misleading, the

reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

Additionally,

> [i]n any private action . . . in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2); see, e.g., Winer Family Trust v. Queen, 503 F.3d 319, 326 (3d Cir. 2007) ("PSLRA requires the applicable mental state be pleaded with particularity").[2]  Finally, under the PSLRA, plaintiffs also "have the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).  If this requirement is not met, "the court shall ... dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A).  "[A]ny claims brought under the 1934 Act must meet the PSLRA particularity requirements quoted above if a plaintiff elects to ground such claims in fraud."  See In re NAHC Sec. Litig., 306 F.3d 1314, 1329 (3d Cir.2002) (applying PSLRA particularity standards to section 14(a) claims). "As fully discussed in this Court's past jurisprudence, in enacting the current version of the PSLRA, 'Congress expressly intended' to 'substantially heighten' the existing pleading requirements."  In re Rockefeller, 311 F.3d at 217.

The interplay between Rule 12(b)(6), Rule 9(b) and the PSLRA is critical in

---

[2]The Court notes that the PSLRA states that "[i]n any private action arising under this chapter, the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met."  15 U.S.C. § 78u-4(b)(3)(A).

formulating a complaint that can survive the initial pleading stage of litigation and "unless plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the [PSLRA], they may not benefit from inferences flowing from vague or unspecific allegations - inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis." In re Rockefeller, 311 F.3d at 224.  "In other words, pursuant to this 'modified' Rule 12(b)(6) analysis, 'catch-all' or 'blanket' assertions that do not comply with the particularity requirements are disregarded."  Cal. Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126, 144 (3d Cir. 2004).

## III.    DISCUSSION

### A.    FEDERAL SECURITIES FRAUD CLAIM

The following represent Singh's alleged misrepresentations and omissions that Plaintiff contends induced him to sell his interest in Wave LLC in 2003 for $500,000: (1) Singh planned to restructure Wave LLC as an S-corporation; (2) it was "important" to "resolve this issue by the end of August"; (3)  Singh's desire to execute the Redemption Agreement was not the result of personal dissatisfaction; (4) Singh "hope[d]" to continue commercial and technical relationships with Wave AG; (5)  Singh and Wave LLC would continue to provide assistance and support to Roll and Wave AG; (6)  Singh failed to tell Roll he intended to compete with Wave AG in Europe (Roll alleges that such competition did not occur until 2005). (Compl. at ¶¶ 13, 14, 19, 23-24).

### 1.    Elements for a Securities Fraud Claim

Roll alleges violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10(b)-5,

which implements Section 10(b).  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127

S.Ct. 2499, 2507 (2007).  Section 10(b) provides that it shall be unlawful for any person,

through the use of interstate commerce, to:

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  Furthermore, SEC Rule 10(b)-5 makes it unlawful for any person to:

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The Supreme Court and Third Circuit have identified the six required elements of

a Section 10(b) action: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a

wrongful state of mind; (3) a connection with the purchase or sale of a security;[3] (4)

reliance[]; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between

the material misrepresentation and the loss."  McCabe v. Ernst & Young, L.L.P., 494

F.3d 418, 424-25 (3d Cir. 2007) (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336,

---

[3]The Court notes that the "connection with the purchase and sale of a security" prong is not in question in this case, and as such, the Court will not address it in detail, although it appears to be properly pled in Plaintiff's Complaint.

341-42 (2005)); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997).

### a.        Materiality

The first element under Section 10(b) requires a plaintiff to show that a material misrepresentation or omission has been made.  McCabe, 494 F.3d at 424.  The Third Circuit has consistently applied an objective test of materiality, holding that a misrepresentation "is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]."  EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 872 (3d Cir. 2000) (quoting TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). "[F]or a misrepresentation or omission to be material 'there must be a substantial likelihood that the disclosure of the omitted fact [or misrepresentation] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'"  Id. at 872 (quoting TSC Indus., Inc., 426 U.S. at 449).  Nonetheless, in the context of a face-to-face transaction, the Third Circuit has noted that the interplay between objective materiality and subjective reliance is somewhat blurred.  Thomas v. Duralite Co., 524 F.2d 577, 584 (3d Cir. 1975).  The Plaintiff would have this Court apply a subjective test of materiality, relying on Duralite Co., but no case in the Third Circuit has ever held that satisfaction of a subjective materiality test is enough by itself to justify a finding of materiality. Accordingly, this Court will base its conclusions upon traditional notions of objective materiality.

Additionally, in the context of material omissions, where a plaintiff claims an omission as the basis for a securities fraud action, the Third Circuit has noted that even

non-disclosure of material information will not give rise to liability under Rule 10(b)-5 unless the defendant had an affirmative duty to disclose that information. Oran v. Stafford, 226 F.3d 275, 285 (3d Cir. 2000). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5."  Id. (citing Basic Inc. v. Levinson, 485 U.S. 224, 239 n. 17 (1988)).

Finally, the Court notes that when a motion to dismiss is brought "[m]ateriality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal." In re Adams Golf, Inc. Securities Litigation, 381 F.3d 267, 274 (3d Cir. 2004) (citing Weiner v. Quaker Oats Co., 129 F.3d 310, 317 (3d Cir.1997) ("[T]he emphasis on a fact-specific determination of materiality militates against a dismissal on the pleadings.")).  "Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law."  In re Adams Golf, Inc. Securities Litigation, 381 F.3d at 274-75(quoting Shapiro, 964 F.2d at 281 n. 11)(quotations omitted); see TSC Indus., 426 U.S. at 450.

Here, Roll alleges that Singh made false statements to him that were material in his decision to redeem his 20% interest in Wave LLC.  (Compl. ¶ 16-21.).  Applying the objective test of materiality, the Court fails to see the significance of Singh's purported plan to restructure Wave LLC as an S-corporation because Singh did not promise to sell a part of the restructured company back to Roll.  Similarly, Singh's statement that his desire to execute the Redemption Agreement was not the result of personal dissatisfaction does not appear to be material to the transaction, nor would a reasonable

person differ as to whether such a statement could be found material. Thus, the Court finds that these alleged misrepresentations are not material.

Conversely, Singh's alleged false representation that it was "important" to "resolve this issue by the end of August" does raise a question as to whether there is a substantial likelihood that a reasonable investor would consider it important in taking action. This statement could induce a reasonable investor to take action quickly when in actuality there was no urgency. Similarly, the alleged omission that Singh failed to tell Roll that he intended to compete with Wave AG in Europe is also material and clearly would have been viewed by the reasonable investor as having significantly altered the total mix of information available, especially since Roll and Singh had a long standing past relationship of cooperation and support. In this instance, a fiduciary duty between Singh, as majority shareholder, and Roll, as a minority shareholder existed, thus creating a duty to disclose material information. See Davis v. United States Gypsum Company, 451 F.2d 659, 662 (3d Cir.1971)(holding that a minority shareholder has standing to bring a direct cause of action against a majority shareholder for breach of a fiduciary duty); Small v. Goldman, 637 F. Supp. 1030, 1033 (D.N.J.1986)(holding that a majority shareholder owes a fiduciary duty directly to the minority shareholders). Therefore, the Court finds that this alleged misrepresentation and omission sufficiently raise an issue as to whether it would influence a reasonable shareholder to act.

Defendants further argue that certain of Singh's alleged statements constituted soft information and were in essence a form of immaterial forward looking puffery. However, this Court disagrees. The Supreme Court has held that even "assuming materiality, the question [still] remains, whether [the alleged misrepresentations which

-14-

consist of] statements of reasons, opinions, or beliefs are statements 'with respect to material fact[s]' so as to fall within the strictures of [Rule 10b-5]." <u>Virginia Bankshares, Inc. v. Sandberg</u>, 501 U.S. 1083, 1091 (1991).  "Material representations must be contrasted with statements of subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism, which constitute no more than 'puffery' and are understood by reasonable investors as such." <u>EP MedSystems, Inc. v. EchoCath, Inc.</u>, 235 F.3d 865, 872 (3d Cir. 2000) (quotations omitted).  The Third Circuit has held that "[s]tatements of 'soft information' from high-ranking corporate officials can be actionable if they are made without a reasonable basis." <u>Weiner v. Quaker Oats Co.</u>, 129 F.3d 310, 320 (3d Cir. 1997) (finding that corporate official's statement was not vague because it contained "a specific figure regarding a particular, defined time period").  However, vague expressions of optimism have not been recognized as actionable.  <u>See</u>, <u>e.g.</u>, <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1432 (3d Cir. 1997) (finding vague and therefore immaterial "a general, non-specific statement of optimism or hope that a trend will continue"); <u>Shapiro</u>, 964 F.2d at 283 n. 12 (holding "United Jersey looks to the future with great optimism" to be "inactionable puffing").[4]  Similarly, "[t]o be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events. [Corporate representatives] are not obligated to predict future events

---

[4]Defendants cite to <u>Capano v. Borough of Stone Harbor</u>, 530 F. Supp. 1254 (D.N.J. 1982), and <u>Alexander v. CIGNA Corp.</u>, 991 F. Supp. 427 (D.N.J. 1998) to support the contention that a federal securities fraud action cannot be predicated upon promises for future action, however, these cases apply New Jersey law, and not Federal securities law.

unless there is reason to believe that they will occur." In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1330 (3d Cir. 2002).

Here, Singh's alleged statements that he "hope[d]" to continue commercial and technical relationships with Wave AG and that he and Wave LLC would continue to provide assistance and support to Roll and Wave AG, are more than mere puffery.  While it is true that the word "hope" normally denotes a statement of a general optimism, Singh's alleged statement that Wave LLC would continue to provide assistance and support to Roll and Wave AG is not vague because it refers back to the already established course of conduct between the parties and their two companies, in which they held inverse interests until the redemption of Roll's interest in Wave LLC took place. The only critical part missing in this alleged misrepresentation is that no specific time frame was given for the continued course of conduct.  Nonetheless, on this Motion to Dismiss, the Court finds that these statements are material and more than mere puffery.

### b.    Scienter

The second element required to bring a securities fraud action is scienter, i.e. - a wrongful state of mind.  McCabe v. Ernst & Young, L.L.P., 494 F.3d 418, 424-25 (3d Cir. 2007).  The Third Circuit defines scienter as:

> a mental state embracing intent to deceive, manipulate or defraud, or, at a minimum, highly unreasonable conduct, involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 148 (3d Cir. 2004); see also 15 U.S.C. § 78u-4(b)(2) (complaint must "state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind"). The Supreme Court has held that, to comport with the pleading requirements of the PSLRA, the inference of scienter "must be cogent and compelling, . . . strong in light of other explanations." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2507-10 (2007). Under the PSLRA's pleading requirements, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 2510. "[A] court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Id.

In this case, the element of scienter has been properly pled with particularity because the most reasonable inference that can be drawn from the facts alleged is that Singh was acting with deceptive intent when carrying out Roll's redemption. The combination of Singh's alleged statement that he planned to restructure Wave LLC as an S-corp. for tax reasons and that it was important to resolve this issue by the end of August, show scienter because an LLC need not be restructured as a S-Corp to obtain the same tax benefits; furthermore, Singh never restructured the company. While it is possible that Singh mistakenly thought that he must restructure as an S-corp. to receive certain tax benefits and then later realized that it was not necessary, this appears to be an improbable scenario and does not dissuade the Court.

Similarly, the pleading requirements of scienter for Singh's statements that: (1) he "hope[d]" to continue commercial and technical relationships with Wave AG; and (2) he and Wave LLC would continue to provide assistance and support to Roll and Wave AG are met. In the Complaint Roll states that Wave LLC's support and assistance continued

-17-

into 2004, the year following the Redemption.  (Compl ¶ 12).  However, according to the

Complaint, Wave LLC began competing with Wave AG in Europe as soon as "early

2004."  Additionally, the Complaint alleges that Wave LLC improperly interfered with

Wave AG's reputation and business relationships as early as February 2005.  First, in

February 2005 it is alleged that Wave LLC refused to fill a Wave AG purchase order for

one of Wave AG's European clients and informed them that all cooperation between

Wave AG and Wave LLC had ceased; secondly, in July 2005 it is alleged that Wave LLC

falsely stated to Wave AG's licensee in the United Kingdom that Wave AG no longer

had the right to appoint distributors or agents in Europe.  The short time period between

Roll's Redemption and the alleged competition in Europe leads a reasonable person to

believe that Singh had planned to cease cooperation before the sale occurred.  This

becomes more conspicuous in light of the fact that there was a long history of

cooperation and support between the two companies since their incorporation in 1999.

Indeed, it is ironic that after a five year mutually beneficial relationship, Singh

unilaterally ceased cooperation within a year of the redemption of Roll's interest in Wave

LLC.  These facts give rise to a "strong - i.e. powerful or cogent - inference" that Singh

had no intention of continuing cooperation at the time of the Redemption, especially,

when all the alleged misrepresentations are taken together as a whole.  On this Motion to

Dismiss, there is no alternate explanation of why Singh and Wave LLC changed their

minds and decided to cease cooperation with Wave AG.

　　　　In addition to the alleged misrepresentations, it is also alleged that Singh failed to

tell Roll he intended to compete with Wave AG in Europe.  The allegations in the

Complaint state that this did not occur until "early 2004."  The Redemption of Roll's

interest in Wave LLC occurred in September 2003.  While the Court finds that it is certainly a possibility that Singh changed his mind within the several months that competition began, the time period is so short as to reasonably attribute it to a plan to rid Roll of his interest in the company and then compete against him directly in the European market.  Here, there is a strong inference that Singh had initiated a plan to compete against Roll, which was brewing before the Redemption of Roll's interest in Wave LLC.  Once again, taken into context with the other alleged misrepresentations, this does provide a strong inference of wrongful intent on the part of Singh.  Therefore the requirement for pleading scienter is met.

### c.  Reliance (transactional causation)

The fourth element required to bring a securities fraud action is reliance, i.e. - transactional causation.  McCabe v. Ernst & Young, L.L.P., 494 F.3d 418, 424-25 (3d Cir. 2007).  "In face-to-face transactions, [an] inquiry into an investor's reliance . . . is [the inquiry] into the subjective pricing . . . by that investor."  Basic, 485 U.S. at 244, 108 S.Ct. 978 (quoting LTV Sec. Litig., 88 F.R.D. 134, 143 (N.D.Tex.1980)).  "In a face-to-face transaction, an investor has no reason to rely on the integrity of an offered price because the price may not reflect available information."  In re Intelligroup Securities Litigation, 527 F. Supp. 2d 262, 292 (D.N.J. 2007) (citing Gariety v. Grant Thornton, LLP, 368 F.3d 356, 367 (4th Cir.2004) (citing Basic, 485 U.S. at 243-44, 108 S.Ct. 978)).

> For face-to-face transactions, the reliance requirement serves to ensure that the plaintiffs who would not have acted differently if the true information were known cannot recover.  The requirement guarantees, in other words, that information that does not affect a buyer's or seller's view of the merits of a transaction cannot form the basis of a cause of action.

Id. (citations omitted).  "Therefore, a securities plaintiff asserting individualized, that is, direct actual reliance is required to plead that the plaintiff was actually aware of and misled by an alleged misrepresentation."  In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262, 292 (D.N.J. 2007).  Firstly, Plaintiff has adequately pled that he relied on Singh's misrepresentations because, at the very least, Roll reacted quickly and in accordance with Singh's request to complete the transaction by August, even though it was consummated shortly thereafter in September.  In addition, it is elementary that Roll would have acted differently if Singh informed him that he wanted the redemption so that he could compete with him globally and cease all cooperation and support with Wave AG.  Therefore, Plaintiff  has adequately pled that he relied on the alleged misrepresentations of Singh.  Secondly, as to the allegation that Singh omitted to inform Roll that he was going to compete with him globally, Roll is entitled to a presumption of reliance, because here he is alleging an omission of material information.  See Affiliated Ute Citizens v. U.S., 406 U.S. 128, 153-54 (1972).  Therefore the pleading requirement for reliance has been met in this action.

Nonetheless, the Defendants argue that the reliance prong can be negated by a showing that Plaintiff did not exercise diligence in its reliance.

> [T]he 'reasonable reliance' element of a Rule 10b-5 claim requires a showing of a causal nexus between the misrepresentation and the plaintiff's injury, as well as a demonstration that the plaintiff exercised the diligence that a reasonable person under all of the circumstances would have exercised to protect his own interests.

AES Corp. v. Dow Chem. Co., 325 F.3d 174, 178 (3d Cir.), cert. denied, 540 U.S. 1068 (2003).  To support their argument, Defendants cite to a case holding that a plaintiff could not establish detrimental reliance where a contract for sale of stock between

business people included an integration clause that expressly superseded and/or nullified prior representations.  Braunstein v. Benjamin Berman, Inc., 1990 WL 192547, *8 - *9 (D.N.J. 1990) (the court held that "the plaintiff could not have reasonably relied on any statements [the defendants] made which were not contained in the September 1 agreement [between the parties] because the agreement contains a waiver.").  In Braunstein, the court also noted that several circuit courts of appeal had "affirmed the validity of integration clauses for defeating the 'reasonable' reliance requirements of 10b-5 claims." Id.; see, e.g., Jackvonry v. RIHT Fin. Corp., 873 F.2d 411, 416-17 (1st Cir. 1989) ("Insofar as [the plaintiff] argues that pre-Agreement statements . . . were materially misleading, his claim fails because in light of the later Agreement . . . he could not reasonably have relied upon them."); One-O-One Enters., Inc. v. Caruso, 848 F.2d 1283, 1287 (D.C. Cir. 1988) ("Were we to permit plaintiffs' use of the defendants' prior representations . . . to defeat the clear words and purpose of the Final Agreement's integration clause, contracts would not be worth the paper on which they are written." (internal quotations omitted))).

Similarly, Defendants rely on the case of Alexander, where the court granted the defendants summary judgment on a common law fraud claim. 991 F. Supp. at 436. There the court held that because the contract contained an integration clause nullifying all prior oral statements between the parties, it was "manifestly unreasonable" for the plaintiffs to assert reliance on the defendants' statements that the parties' "relationship would be long lasting," and that the agreement between the parties would be "in perpetuity." Id.

However the Court finds that Defendants' argument that the integration clause

acts as a waiver is misplaced because Section 29(a) of the Exchange Act [28 U.S.C. § 78cc(a)] forecloses anticipatory waivers of, inter alia, compliance with duties imposed under Rule 10b-5.  See AES Corp. v. Dow Chem. Co., 325 F.3d 174, 178 (3d Cir.), cert. denied, 540 U.S. 1068 (2003).   In AES, the court did not rule out the possibility that state law may play a role in some situations involving a Rule 10b-5 claim, but ultimately concluded that it had no role in the context of an integration clause negating the reliance element of a securities fraud action.  Id.  Section 29(a) provides: "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."  15 U.S.C. § 78cc(a).  The court in AES upheld that, "by its terms, Section 29(a) 'prohibits waiver of the substantive obligations imposed by the Exchange Act.'" Id. (quoting  Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 228 (1987).

Furthermore, even if the Court held that the integration clause at issue was not preempted by federal securities law, the Court would still not dismiss Plaintiff's federal securities fraud claim for failure to allege due diligence because it is not proper at this juncture of the case.

> The obligation of due care must be a flexible one, dependent upon the circumstances of each case. We require only that the plaintiff act reasonably. Since the failure to meet that standard is in the nature of an affirmative defense, the burden of proof rests upon the defendant. Such matters as fiduciary relationship, opportunity to detect the fraud, sophistication of the plaintiff, the existence of long standing business or personal relationships, and access to the relevant information are all worthy of consideration.

Straub v. Vaisman & Co., Inc., 540 F.2d 591, 598 (3d Cir. 1976).  Singh argues that Roll

failed to exercise diligence because nowhere in the Complaint does Roll allege that he requested financial statements or disclosures from Singh or Wave LLC.  In fact, there are no affirmative representations that Roll inquired as to how Singh valued the $500,000 purchase price; and indeed, the Complaint concedes that no negotiations took place between the parties for the purchase price.  (Compl. at ¶ 15.)  Although this may evidence a lack of due diligence on the part of Roll, it is not appropriate to decide such an issue on a motion to dismiss.  It is sufficient that Plaintiff has pled that he relied on Defendants' alleged misrepresentations. (Id. at ¶ 16.)

### d.    Loss Causation

An additional element of a securities fraud action is "loss causation."  McCabe, 494 F.3d at 424 (detailing the elements for Section 10(b) liability in the Third Circuit); 15 U.S.C. § 78u-4(b)(4) (plaintiffs "have the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages"). The Third Circuit has noted that similar to the concept of proximate cause in the tort context, loss causation focuses on whether the defendant should, as a matter of public policy, be held responsible for the losses suffered by the plaintiff. McCabe, 494 F.3d at 425.  Indeed, "the loss causation requirement asks whether the misrepresentations or omission proximately caused the economic loss." Id. at 426.  A plaintiff must establish a "direct causal nexus between the misrepresentation and the plaintiff's economic loss," and show that the defendant's misrepresentations were a "substantial factor" in causing the loss.  Id. at 426, 427.

In McCabe, the Third Circuit cited approvingly the dissent in the Second Circuit case, Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705 (2d Cir.), cert. denied, 449 U.S. 1011

(1980).  494 F.3d at 431.  In <u>Marbury</u>, investors sued a brokerage firm under Section

10(b) after securities they had bought from the firm declined in value.  The investors

bought the securities on the advice of a trainee who had misrepresented himself as a

licensed broker.  <u>Id.</u>  The dissent in <u>Marbury</u> argued that the injury averred must proceed

directly from the wrong alleged and must not be attributable to some supervening cause.

The dissent further stated that, "[t]his elementary rule precludes recovery in the case at

bar since [the broker's] misrepresentations as to his qualifications as a broker in no way

caused the decline in the market value of the stocks he promoted."  <u>Id.</u> (citing <u>Marbury</u>,

629 F.2d at 616-17 (Meskill, J., dissenting)).  The Third Circuit in <u>McCabe</u> agreed,

explaining that in <u>Marbury</u>, "[t]he value of the securities did not decline because of the

trainee's misrepresentation."  <u>Id.</u>  The Third Circuit held that the subject of the fraudulent

statement or omission must be the cause of the actual loss suffered by the plaintiff.  <u>Id.</u> at

432.  In strong language, the court stated that "[t]o the extent <u>Marbury Management</u>

conflates the loss causation and transaction causation requirements in § 10(b) cases, it is

contrary to our jurisprudence and, more importantly, to the Supreme Court's recent

decision in <u>Dura</u>."  <u>Id.</u> at 431 (citing <u>Dura Pharma., Inc. v. Broudo</u>, 544 U.S. 336, 341-42

(stating a § 10(b) claim's "basic elements" include both transaction causation and loss

causation).

     Plaintiff relies on <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, to support the argument

that the "loss causation element is satisfied where a fraudulent misrepresentation or

omission induces the plaintiff to enter into the challenged transaction," as opposed to the

notion that both transactional and loss causation must be met.  455 F.3d 195, 223 (3d Cir.

2006) (citing <u>Hatrock v. Edward D. Jones & Co.</u>, 750 F.2d 767, 773 (9th Cir.1984)).

However, this was not a holding in the Berckeley case, and the Third Circuit has specifically so indicated in its more recent jurisprudence.  See McCabe, 494 F.3d at 425 n. 2.   Recently, in McCabe, The Third Circuit unequivocally held that loss causation is a separate and independent element apart from transactional causation and that it applies in both the typical (misrepresentations or omissions regarding publicly traded stock, i.e. - fraud on the market) and non-typical (misrepresentations or omissions that induced another party into entering a private transaction) securities fraud action. Thus, this Court must address each element separately.  McCabe, 494 F.3d at 426.

Similarly, Plaintiff's reliance on EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 872 (3d Cir. 2000), is misplaced.  In that case, the court allowed a securities fraud action to survive a motion to dismiss where the plaintiff alleged loss causation by stating that it "sustained substantial financial losses as a direct result of the aforementioned misrepresentations and omissions on the part of EchoCath." Id. at 884.  In EP Medsystems, the Third Circuit concluded that the complaint intimated loss causation because it alleged that the purported misrepresentations which induced the transaction were about "imminent" business opportunities that were actually non-existent.  Id. at 869. The court reasoned that it was those alleged misrepresentations that inflated the value of the securities and ultimately were the cause of plaintiff's alleged loss.  See id.  The court further implied that those factual circumstances represented the outer boundary of what would be considered an adequate pleading of loss causation by stating that the plaintiff "could have more specifically connected the misrepresentation to the alleged loss."  Id. at 885.

Like the present case, EP Medsystems was a non-typical securities fraud case

where the alleged misrepresentations were made through personal communications.  Id.

However, unlike the finding in EP Medsystems, here the Court cannot find that Roll's

Complaint intimates loss causation in connection with the redemption price paid for

Roll's interest in Wave LLC because none of the alleged misrepresentations or omissions

have any connection with the value of Roll's former interest in Wave LLC.  Roll alleges

that now, four years after receiving Singh's alleged misrepresentations and entering into

the Redemption Agreement, his ownership interest in the company would be worth $8

million had he not sold for $500,000 in 2003.  None of the misrepresentations or

omissions Roll alleges, however, concerned the value of Wave LLC or his 20 percent

interest therein.[5]  Under controlling authority, therefore, Roll has failed to adequately

plead loss causation with regard to the redemption price of Wave LLC.  See McCabe, 494

F.3d at 431-32.

### 2.        Statute of Limitations

Roll's federal securities claim is also barred by the statute of limitations because

allegations made in the Complaint indicate that he had knowledge of a general scheme of

fraud from specific events that took place long before suit was filed in this case.  Section

804 of the Sarbanes-Oxley Act, 28 U.S.C. § 1658(b), provides that:

---

[5]The last prong under Rule 10b-5, requires a plaintiff to plead with particularity
that he suffered an "economic loss."  McCabe, 494 F.3d at 424; Newton v. Merrill Lynch,
Pierce, Fenner & Smith, Inc., 259 F.3d 154, 177 (3d Cir. 2001) (holding that "'failure to
show actual damages is a fatal defect in a Rule 10b-5 cause of action.'").  Here, Plaintiff
fails to show that he suffered a loss regarding the redemption price of his interest in
Wave LLC.  There is no allegation that the value of Plaintiff's former interest in Wave
LLC was different from the $500,000 he received in consideration at the time of
redemption.  Accordingly, the Court finds that the Plaintiff has failed to adequately allege
the element of "economic loss."

> a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)) may be brought not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation.

(emphasis supplied); see also Lieberman v. Cambridge Partners, L.L.C., 432 F.3d 482, 484 (3d Cir. 2005) (Sarbanes-Oxley "extended the applicable limitations period for private securities fraud claims . . . to the earlier of two years after discovery or five years after the [allegedly] unlawful transaction." (emphasis supplied)); In re Exxon Mobil Corp. Sec. Litig., 387 F. Supp. 2d 407, 415 (D.N.J. 2005) ("statute of limitations . . . [is] two years after the discovery of the [alleged] wrongdoing or five years from the alleged violation, whichever [is] earlier" (emphasis supplied)), aff'd, 500 F.3d 189 (3d Cir. 2007).[6]

The Third Circuit applies an "inquiry notice" standard for determining when the two year discovery period begins to run. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1325 (3d Cir. 2002). The

> period begins to run from when the plaintiff[s] discovered or in the exercise of reasonable diligence should have discovered the basis for their claim against the defendant. Whether the plaintiffs, in the exercise of reasonable diligence, should have known of the basis for their claims depends on whether they had "sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity." The test for "storm warnings" is an objective one, based on whether a "reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning." Plaintiffs need not know all of the details or "narrow aspects" of the alleged fraud to trigger the limitations period; instead, the period begins to

---

[6]15 U.S.C. § 78c(a)(47) defines the term "securities laws" to include the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., under which Roll's claims are brought.

run from "the time at which plaintiff should have discovered the general
fraudulent scheme."

Id.  (citations omitted).  "Courts in this District have previously stated that a

determination of the timing of a plaintiff's knowledge of his claim is a 'fact-intensive

inquiry.'" Nappier v. Pricewaterhouse Coopers LLP, 227 F. Supp. 2d 263, 274 (D.N.J.

2002); see also Campbell Soup, 145 F. Supp. 2d at 602 (stating that "it is inappropriate to

dismiss claims as time-barred where . . . the analysis is so fact-intensive.") (citations

omitted); In re Lucent Technologies, Inc. Sec. Litig., 217 F. Supp. 2d 529, 542 (D.N.J.

2002) (stating that " '[w]hether a plaintiff had sufficient facts to place him on inquiry

notice of a claim for securities fraud under ... Rule 10b-5 is a question of fact, and such is

often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6).' ")

(quoting Marks v. CDW Comp. Centers, Inc., 122 F.3d 363, 367 (7th Cir.1997)); Gruber

v. Price Waterhouse, 697 F. Supp. 859, 861 (E.D.Pa.1988) (finding that "[i]n the context

of the statute of limitations defense, where contrary inferences may reasonably be drawn

from the facts which are material to when the cause of action accrued, defendants bear a

heavy burden of showing that the claims are untimely as a matter of law.") (citations

omitted); but cf. NAHC, 306 F.3d at 1326-27 (recognizing that statute of limitations

questions may be resolved on a motion to dismiss).

Information that may be held to constitute inquiry notice includes "the

accumulation of information over a period of time that conflicts with representations that

were made when the securities were originally purchased, or any financial, legal or other

data that would alert a reasonable person to the probability that misleading statements or

significant omissions have been made." Id. at 1326 n. 5 (quoting Mathews v. Kidder,

Peabody & Co., 260 F.3d 239, 252 (3d Cir.2001)).  "Once the defendants establish the existence of storm warnings, the burden shifts to the plaintiffs to show that they exercised reasonable diligence, but were unable to discover their injuries."  In re Exxon Mobil Corp. Securities Litig., 387 F. Supp. 2d 407, 417 (D.N.J. 2005) (quoting NAHC, 306 F.3d at 1327).

In this case, the alleged violation – Singh's alleged misrepresentations and omissions – occurred in August 2003.  Roll filed his Complaint August 28, 2007, almost four years later.  Defendants argue that - by his own reckoning - Roll had to have discovered the alleged underlying facts for this cause of action at least two years before he filed the Complaint.  In the Complaint, Roll alleges that Wave LLC began competing directly with Wave AG in "early 2004." (Compl. at ¶ 23).  Roll also contends that Singh's alleged August 2003 statements were fraudulent because, at the time they were made, "Singh had already formed a plan to . . . begin competing directly with Wave AG." (Id. at ¶ 19).  Defendants argue that if Singh's statements were fraudulent, then Roll, by his own admission, discovered that fraud by "early 2004," setting in motion the two-year limitations period of 28 U.S.C. § 1658(b).  Plaintiff contends that while the Complaint does allege that Wave LLC began to compete with Wave AG in early 2004, it does not state when Roll became aware of this knowledge.

Although the Complaint does not allege when Roll first gained knowledge of this alleged fact, nonetheless, the Third Circuit has viewed this question as an objective one, and this Court need not find that Roll had actual notice of information that would toll the statute of limitations, merely that he should have known through storm warnings.  In this case, Roll and Singh had a close cooperative relationship before the redemption of Roll's

interest in Wave LLC occurred.  Roll operated and sold substantially similar products and services in Europe, while Singh sold them in the United States.  Taking the alleged facts in Roll's Complaint as true, Singh and Wave LLC were competing in Europe against Roll since early 2004.  Therefore, to escape the statute of limitations in this case, Singh and Wave LLC would need to have been competing with Roll in Europe for over a year without his knowledge.  While this is a possibility, it is not probable, and the Court finds it more likely that a reasonable person in Roll's position - one who had a close business relationship with Singh and Wave LLC and who was still conducting business with them, would have known that they were intruding upon his sales market in Europe.  However, for the Court to make an objective determination as to whether this alleged competition constituted a storm warning, it would require further discovery into various factors, such as: market conditions, time tables reflecting the insertion of competing products into the market, the volume of such insertions, and a comparison of the geographic areas where the Plaintiff and Wave LLC were simultaneously competing. Therefore, the alleged fact that Wave LLC began to compete with Wave AG in "early 2004" is not enough to warrant the dismissal of Plaintiff's federal securities fraud claim.

Notwithstanding the insufficiency of Wave LLC's alleged competition in "early 2004" to rise to the level of a storm warning, Roll's allegations about events in 2005 are dispositive in establishing when he received a first storm warning of a fraudulent scheme. Specifically, Roll alleges that Singh formed Wave Europe in May 2005 and Singh made other attempts to interfere with Wave AG's business in February and July 2005, including at least one successful effort to divert a customer. (Id. at ¶¶ 23-25).  All these alleged events occurred more than two years before Roll filed this action on August 28,

2007.  The Complaint clearly shows that Roll had notice of the February 2005 activity because Wave LLC failed to fill Wave AG's purchase order for a customer in the Netherlands.  It is also alleged that during this time period, Wave LLC advised Wave AG's Netherlands based client, Centocor BV, that cooperation between Wave LLC and Wave AG had ceased.  This activity certainly constitutes storm warnings similar to the ones described by the Third Circuit's jurisprudence.  Therefore, the Court finds that Plaintiff's federal securities fraud claim must be dismissed for failure to comply with the statute of limitations.

> **B.      NEW JERSEY SECURITIES FRAUD CLAIM**

> **1.      New Jersey versus Federal Securities Fraud Action**

Plaintiff contends that the same allegations pertaining to his claim for federal securities fraud also amount to a violation of New Jersey's Uniform Securities Law ("NJUSL").  Defendants move to dismiss Plaintiff's New Jersey based securities fraud claim based upon the same arguments proffered against the federal securities fraud claim. The NJUSL provides civil liability against any person who, <u>inter</u> <u>alia</u>,

> Offers, sells or purchases a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission).

N.J.S.A. 49:3-71(a)(2).

Defendants rely on a series of District of New Jersey cases for the proposition that a securities fraud action based on the NJUSL should be dismissed if the federal securities fraud action is also dismissed.  <u>See</u> <u>Metz v. United Counties Bancorp</u>, 61 F. Supp. 2d 364, 380 (D.N.J. 1999) (where the court dismissed a plaintiff's NJUSL claim based on its

dismissal of the plaintiff's Section 10(b) claim concluding that "[t]he [c]ourt does not have reason to believe that the New Jersey statute is any more or less exacting than the corresponding federal statutes.") (citing Wiley v. Hughes Capital Corp., 746 F. Supp. 1264, 1301 (D.N.J. 1990)); see also DeRobbio v. Harvest Communities of Sioux City, Inc., 2002 WL 31947203, *6 (D.N.J. Oct. 30, 2002) (the court concluded that "the basic elements of a cause of action under the NJUS[L] are substantially the same as those of Section 10(b) of the Exchange Act: (1) an untrue material statement or omission; (2) scienter; (3) causation; and (4) injury to a plaintiff.") (citing Riggs v. Scheppell, 939 F. Supp. 321 (D.N.J. 1996) (where the court noted that because plaintiffs had failed to allege the elements of a Section 10(b) claim, "they ha[d] failed for the same reasons to support a claim under the NJUS[L]").  However, those cases only provided a cursory comparison of the NJUSL and its federal equivalent and do not specifically address the differences intended by the New Jersey legislature in enacting the NJUSL.

In the case of Kaufman v. I-Stat Corp., the New Jersey Supreme Court specifically addressed the meaning of the NJUSL as compared to its federal counterpart. 165 N.J 94 (2002).  In Kaufman, the court stated that

> The USL's drafters rejected any "requirement that the buyer prove reliance on the untrue statement or the omission.  He must show only that he did not know of it." As a result, securities-fraud plaintiffs need only prove the misrepresentations and their ignorance of them, a significantly lower burden than that imposed by a common-law fraud action.
>
> . . . .
>
> The [New Jersey] Legislature . . . has already clearly stated its choice in approaching securities-fraud complaints: it did not lessen the proof required to demonstrate reliance on a misrepresentation, but instead eliminated reliance as an element of securities fraud entirely in favor of a system in which *privity establishes causation*.  The Legislature balanced

> the plaintiff's advantage of not having to show reliance with the
> defendant's advantage of being immune from liability to anyone out of
> privity.

Id. at 112-13(citations omitted) (emphasis added).  As evidenced by the holding in

Kaufman, causation is established under the NJUSL by privity.  Here privity has clearly

been established between Wave LLC and Roll because the Redemption Agreement is a

contract between Roll and Wave LLC.  Additionally, Singh signed the Redemption

Agreement on behalf of Wave LLC.  Thus, causation is adequately pled for the state

securities claim.  Furthermore, as discussed supra, because all other elements in

connection with Roll's federal securities fraud claim (except for loss causation) have

been adequately pled, the Court finds that Roll's New Jersey based securities fraud claim

is pled adequately to survive a motion to dismiss.

### 2.    Time Bar under NJUSL

However, the Court finds that Roll's NJUSL claim must be dismissed for failure

to comply with the NJUSL's two-year statute of limitations which provides in pertinent

part:

> No person may bring an action under this section more than two years
> after the contract of sale . . . or more than two years after the time when
> the person aggrieved knew or should have known of the existence of his
> cause of action, whichever is later.

N.J.S.A. § 49:3-71(g).  For the same reasons stated, supra pp. 26-31, in support of the

dismissal of Roll's federal securities claim, Roll's failure to comply with the NJUSL's

two-year limitation period is manifest from his Complaint.  In this case, the "contract of

sale" – the Redemption Agreement – was executed in September 2003.  Roll filed his

Complaint August 28, 2007, almost four years later.  Thus, to save his NJUSL claim,

Roll must have filed his Complaint within two years from the date he "knew or should have known" of the facts underlying this claim, i.e., that he neither knew nor should have known of his claim before August 28, 2005.  Instead, his pleading defeats any such argument because Roll alleged that Singh allegedly began competing with him, in "early" 2004 and refused to do business with him as soon as February 2005, in direct contravention of the alleged misstatements made to Roll to induce the redemption of his interest in Wave LLC.  Accordingly, Roll should have filed his claim by February 2007.  Thus, for the same reasons that Roll's federal securities fraud claim fails and is dismissed, his NJUSL claim is also dismissed.

###   C.       LEGAL FRAUD

The five elements of a claim for legal fraud in New Jersey are similar to the elements of a Section 10(b)-5 securities claim.  This Court has held that "[i]n order to establish a claim for common law fraud under New Jersey law, one must show: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."[7] Perry v. Gold & Laine, P.C., 371 F. Supp. 2d 622, 627 (D.N.J. 2005) (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997)); see also Weil v. Express Container Corp., 360 N.J. Super. 599 612-13 (App. Div. 2003), certif. denied 177 N.J. 574 (2003) (citing

_____

[7]"Both negligent and fraudulent misrepresentation require a plaintiff to demonstrate that it sustained an injury that was *caused by the defendant's misrepresentation* as an element of the claims."  Konover Const. Corp. v. East Coast Const. Services Corp., 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (emphasis added).

Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624-25 (1981)). "[F]raud is never

presumed, but must be established by clear and convincing evidence." Id. at 613 (citing

Albright v. Burns, 206 N.J. Super. 625, 636 (App. Div.1986)).

> Ordinarily, an action for misrepresentation cannot be predicated upon
> matters in futuro.  However, *a false representation of an existing*
> *intention*, i.e., a false state of mind, *with respect to a future event or action*
> *has been held to constitute actionable misrepresentation*.  In other words,
> the defendant must have no intention at the time he makes the statement of
> fulfilling the promise.  Defendant's lack of intention may be shown
> circumstantially by his subsequent acts and by subsequent events or by
> evidence that the statement was impossible to fulfill based upon
> contingencies or circumstances known to the promisor at the time of the
> statement but unknown to the promisee.  The intention of the promisor not
> to perform is not sufficiently established by mere proof of
> nonperformance; moreover, failure to perform does not impose upon the
> alleged promisor the burden of showing that his nonperformance was due
> to circumstances which arose after the making of the agreement.

Capano v. Borough of Stone Harbor, 530 F. Supp. 1254, 1264 (D.N.J. 1982) (emphasis

added) (quotations omitted) (citations omitted).  "Similarly, statements that can be

categorized as 'puffery' or 'vague and ill defined opinions' are not assurances of fact and

thus do not constitute misrepresentations."  Alexander v. CIGNA Corp., 991 F. Supp.

427, 435 (D.N.J. 1998).  "Indeed, in order to constitute a fact, a statement's content must

be susceptible of 'exact knowledge' at the time it is made." Id.  In Alexander, the court

held that language such as " [the] relationship would be long lasting" and "agreement one

in 'perpetuity'" were inactionable because they indicated future events.  Id. at 436.  In

Capano, the Court held that the claim was not actionable because a promise that

"something would be worked out" was too vague and indefinite to constitute a

misrepresentation.  530 F. Supp. at 1264.

　　　　In this case, the Plaintiff has properly pled that some of the alleged

misrepresentations and the omission were material and more than mere puffery.  See supra pp.11-16.  Similar to the statements in Alexander, the alleged misrepresentations of the Defendant included language that intimated future events.  Here, the Defendants used the term "hope," while in Alexander the statements included the word "would."  For these statements to be considered actionable, the Plaintiff must allege and ultimately show that Defendants had no intent on fulfilling their promises at the time they were made.  Certainly, with regard to the promise of Singh to transform Wave LLC into an S-corporation and the need to finish the Redemption by August for tax purposes, it can be inferred that Defendant lacked the intent to carry out the promises since no action was necessary to take advantage of the tax benefits of an S-corporation.  In addition, Plaintiff has adequately pled that Singh intended to not continue to cooperate and support Roll and Wave AG at the time that he sought Roll to exercise the Redemption.  It is unclear whether Plaintiff will be able to ultimately show Defendants' ill intentions at the time the representations were made, however, Plaintiff's allegations are sufficient to survive this Motion to Dismiss.

The second prong which is the equivalent of scienter has been properly pled as discussed supra pp.16-18.  The third prong which requires that the defendant intend for the plaintiff to rely on the statements is also met here because the statements (most particularly the S-corporation and tax benefit statements) created a sense of urgency that may have induced Plaintiff to enter into the transaction before adequately thinking it through or seeking the advice of counsel.  From this, and the other alleged misrepresentations, the Court can infer that the Defendants intended for Plaintiff to rely on such statements, including the promises of "continued cooperation and support."

The fourth prong requires reasonable reliance.  <u>Perry</u>, 371 F. Supp. at 627.  For purposes of surviving a motion to dismiss, "[t]he concept of reasonable reliance does not contemplate an objective test. 'Common law fraud requires a showing of actual reliance, but not objectively reasonable reliance, since the perpetrator of a fraud may not urge that the victim should have been "more circumspect or astute."'"  <u>In re Curriden</u>, 2007 WL 2669431 at * 7 (quoting <u>Union Ink Co. v. AT & T Corp</u>., 352 N.J. Super. 617, 646 (App. Div. 2002), <u>certif. denied</u>, 174 N.J. 547 (2002); (quoting <u>Jewish Ctr. of Sussex County v. Whale</u>, 86 N.J. 619, 626 n. 1 (1981)).  In the case of <u>Alexander</u>, there was an integration clause which explicitly nullified all prior oral and written agreements between the parties. 991 F. Supp. at 436.  The court held that "it [wa]s manifestly unreasonable for plaintiffs to assert that they reasonably relied on any alleged [prior] statements." <u>Id</u>.  Here, Defendants argue that the integration clause in the Redemption Agreement prevents a showing of reasonable reliance by Plaintiff, and that as a consequence, Plaintiff's legal and equitable fraud claims should be dismissed.  However, this Court finds that the reasonable reliance prong has been properly pled because Roll stated that he "relied on Singh's misstatements and omissions in agreeing to sell his membership interest in Wave LLC."  (Compl. ¶ 35).

The determination of whether Plaintiff reasonably relied on Singh's alleged misrepresentations is a fact based inquiry that cannot be decided at this early stage of the litigation, despite the absence of allegations to show that Roll requested financial data to ascertain a value for his interest or even attempted to negotiate the Redemption price of $500,000.  (Compl. at ¶ 15.)  It may be difficult to believe that Roll could have reasonably relied on Singh's bare representations when redeeming his entire interest in

Wave LLC without asking for financial information, however the facts as alleged, supplemented by additional discovery, may lead a finder of fact to conclude that Roll did reasonably rely on the alleged misstatements, especially in light of the fiduciary relationship that existed between Roll and Singh.

The last prong that must be met in Plaintiff's legal fraud claim is that there must be some "resulting damage to the plaintiff."   Perry, 371 F. Supp. at 627.  A close inspection of the Complaint reveals that no allegations have been made that Roll paid more or less for his interest in Wave LLC than the actual value at the time of redemption. See supra p. 26.  Thus, any increase in value that occurred after the Redemption can be attributed to Singh and not the alleged misrepresentations or omission.

However, Roll has adequately pled that the alleged misrepresentations were a proximate cause of Wave AG's lost opportunities.  These damages could be categorized as "lost opportunity" damages, because they represent Wave AG's lost profits, which were directly related to Singh and Wave LLC's alleged misrepresentations and omissions regarding cooperation, support and competition with Wave AG.  Roll has specifically alleged that Wave LLC ended support in February 2005 which resulted in the loss of at least one customer.  (See Compl. at ¶¶ 22 - 29.)  With further discovery, Plaintiff may be able to show that these losses are not "wholly speculative," and quantify the actual loss. Thus, "resulting damages" have been adequately pled because Roll suffered potential damages as a majority shareholder of Wave AG.  Accordingly, the Court finds that Plaintiff's common law fraud claim is adequately pled and survives this Motion to Dismiss.

### D.        EQUITABLE FRAUD CLAIM

For the same reasons Roll sets forth a cause of action for legal fraud, he also sets forth a cause of action for equitable fraud.  "Equitable fraud is similar [to legal fraud], but does not require knowledge of the falsity and an intent to obtain an undue advantage."  Weil, 360 N.J. Super at 613; see Talcott Fromkin Freehold Assoc. v. Freehold Twp., 383 N.J. Super 298, 317 (App. Div 2005) (holding same).  "Thus, a party who makes a false representation will be held liable if the party made such false representation negligently or innocently."  Talcott Fromkin Freehold Assoc., 383 N.J. Super at 317.  Only the common law elements of scienter – knowledge of the falsity and the intent to obtain an undue advantage – are not essential if the plaintiff seeks to prove equitable, rather than legal fraud.  Jewish Ctr. of Sussex, 86 N.J. at 625.  As discussed, supra p. 38, Roll has adequately pled all the elements in his legal fraud claim and that certain damages were proximately caused by the alleged misrepresentations.  Thus, for the same reasons, his equitable fraud claim also survives this Motion to Dismiss.

### E.     NEGLIGENT MISREPRESENTATION CLAIM

To establish a claim for negligent misrepresentation, a plaintiff must show "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss."  Konover Constr. Corp. v. E. Coast Constr. Servs. Corp., 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotations omitted). The plaintiff must also demonstrate that he sustained an injury proximately caused by the defendant's statements. Id.; see also H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983); McCabe, 494 F.3d at 438.  While "a fiduciary duty between the parties is not an element of a claim for negligent misrepresentation," a plaintiff seeking to recover for negligent misrepresentation must plead that the defendant

owed it a duty of care.[8]  Kronfeld v. First Jersey Nat. Bank, 638 F. Supp. 1454, 1465 (D.N.J. 1986).  "The common law tort of negligent misrepresentation shares all the components of fraud, but includes one additional factor:  the misrepresentation must be made by a person with a duty to the plaintiff."  In re Prudential Ins. Co. of Am. Sale Practices Litig., 975 F. Supp. 584, 619 (D.N.J. 1996), rev'd on other grounds, 133 F.3d 225 (3d Cir.), cert. denied, 525 U.S. 817 (1998).

As an initial matter, Roll's negligent misrepresentation claim is properly pled, because, as already discussed, supra pp. 34-38, Roll has adequately pled that the alleged misrepresentations proximately caused his alleged damages.  Thus, his negligent misrepresentation claim would survive on these grounds.

However, despite the Court's holding that Plaintiff's negligent misrepresentation claim is properly pled, this claim must fail because this is not the type of case where a negligent misrepresentation claim is appropriate.  In discussing negligent misrepresentation cases, the New Jersey Supreme Court has observed,

> Importantly, the cases do not involve a breach of contract claim between parties in privity; rather, they involve tort claims by innocent third parties who suffered purely economic losses at the hands of negligent defendants with whom no direct relationship existed. Courts have justified their finding of liability in these negligence cases based on notions of a special relationship between the negligent tortfeasors and the foreseeable plaintiff who relied on the quality of defendants' work or services, to their detriment. The special relationship, in reality, is an expression of the courts' satisfaction that a duty of care existed because the plaintiffs were

---

[8]Defendants contend that Plaintiff has failed to allege that Singh and Wave LLC owed Roll a duty of care, however, as discussed infra, pp. 42-43, a majority shareholder owes a fiduciary duty to minority shareholders.  Nonetheless, it is not necessary for the Court to answer the question of whether Plaintiff has adequately alleged a duty of care because the negligent misrepresentation claim is dismissed on other grounds.  See infra, p. 42.

particularly foreseeable and the injury was proximately caused by the
defendant's negligence.

People Express Airlines v. Consol. Rail Corp., 100 N.J. 246, 256-57 (1985) (emphasis

added).  New Jersey law generally follows the Restatement (Second) of Torts § 552 in

regard to negligent misrepresentation claims.  It provides in pertinent part:

> Information Negligently Supplied for the Guidance of Others
>
> (1) One who, in the course of his business, profession or employment, or
> in any other transaction in which he has a pecuniary interest, supplies false
> information for the guidance of others in their business transactions, is
> subject to liability for pecuniary loss caused to them by their justifiable
> reliance upon the information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the information.
>
> (2) ... the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit
> and guidance he intends to supply the information or knows that the
> recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information
> to influence or knows that the recipient so intends or in a substantially
> similar transaction.

Restatement (Second) of Torts § 552.  Two recent cases in the District of New Jersey

have dismissed claims for negligent misrepresentation where the two parties were in

privity of contract and had substantial bargaining power.  See Commerce Bancorp, Inc. v.

BK Intern. Ins. Brokers, Ltd., 490 F. Supp. 2d 556, 564 (D.N.J. 2007) (holding that when

a "dispute involves two parties to a contract, who negotiated at arms-length to achieve

the acquisition of a business, had a direct relationship, and no special duty of care existed

between them," there was not a valid claim for negligent misrepresentation); Diebold,

Inc. v. Continental Cas. Co., No. 07-1991, 2008 WL 1372948 at *7 (D.N.J. April 10,

2008) (holding that when two parties "both [have] substantial bargaining power [and] had

a direct contractual relationship with one another . . . it is not a proper legal basis for a negligent misrepresentation claim").

This is simply not the kind of case in which a negligent misrepresentation claim is appropriate.  Similar to the parties in <u>Diebold</u> and <u>Commerce Bancorp. Inc.</u>, here, both parties had substantial bargaining power.  This is evidenced by Roll's request for a reciprocal Option to redeem Singh's interest in Wave AG.  Because the parties in this case have a direct contractual relationship, and did not make any type of representation to benefit or guide the other party, but instead were making representations to further their own interests, Plaintiff's claim of negligent misrepresentation must fail as a matter of law.

### F.         BREACH OF FIDUCIARY DUTY CLAIM

"Breach of fiduciary duty is a tort claim requiring a showing of duty, breach, injury, and causation." <u>In re ORFA Sec. Litig.</u>, 654 F. Supp. 1449, 1457 (D.N.J. 1987). The Third Circuit has applied the heightened pleading requirements of Rule 9(b) when a cause of action is "grounded in allegations of fraud." <u>See</u>, <u>e.g.</u>, <u>Cal. Public Employees' Retirement System</u>, 394 F.3d at 163.  Here, the gravamen of the alleged fiduciary breach is no different from the allegations in the fraud counts:  Roll alleges that the Defendants "ma[de] false statements to Roll and omitt[ed] to state material facts for the purpose of inducing him to relinquish his membership interest in Wave LLC for an artificially low price." (Compl. at ¶ 59).  Accordingly, the Court will apply the same pleading requirements of <u>Fed. R. Civ. P.</u> 9(b) where appropriate.

It is well settled law that a majority shareholder has a fiduciary duty to minority shareholders, thus the element of duty has been sufficiently pled because at the time of

the redemption, Singh held an 80% interest and Roll held a 20% interest.  See Davis v. United States Gypsum Company, 451 F.2d 659, 662 (3d Cir.1971)(holding that a minority shareholder has standing to bring a direct cause of action against a majority shareholder for breach of a fiduciary duty); Small v. Goldman, 637 F. Supp. 1030, 1033 (D.N.J.1986)(holding that a majority shareholder owes a fiduciary duty directly to the minority shareholders).  Plaintiff has also sufficiently pled a breach of duty by alleging that Singh made misrepresentations to induce the redemption of Roll's interest in Wave LLC.  In addition, as already demonstrated, Plaintiff also adequately alleged the element of damages and proximate causation.  Although, none of the alleged misrepresentations or omissions bore a relationship to the price Wave LLC paid to redeem Roll's 20 percent interest, they did bear a direct nexus to Wave LLC's alleged failure to continue cooperation and support to Wave AG, as well as the beginning of the alleged competition.  Thus, Plaintiff has properly stated a claim for breach of fiduciary duty.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim is granted in part and denied in part.  It is denied with regard to Plaintiff's claims for common law fraud, equitable fraud, and breach of fiduciary duty.  However, it is granted with regard to Plaintiff's Federal and New Jersey based securities fraud claims along with Plaintiff's negligent misrepresentation claim.  An appropriate Order will follow.

Dated: April 12, 2010

s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge